ORIGINAL

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 2 6 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**LATEX CONSTRUCTION COMPANY, INC.,**<br><br>**Defendant.** | **Civil Action File No.:**<br><br>**1:10-CV-3476** |

**COMPLAINT FOR DECLARATORY RELIEF OF**
**NATIONAL UNION FIRE INSURANCE COMPANY**
**OF PITTSBURGH, PA.**

COMES NOW Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and files this Complaint for Declaratory Relief, and alleges and avers as follows:

**INTRODUCTION**

1.     This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 to determine and resolve questions of actual controversy involving a commercial umbrella liability insurance policy issued to Latex Construction Company, Inc. ("Latex") by National Union.

2.     National Union seeks a declaration that it has no duty to defend, indemnify or otherwise pay Latex, in any form, in connection with a lawsuit filed in the District Court of Harris County, Texas, styled *Panhandle Eastern Pipe Line Company LP v. Acuren Inspection, Inc., Individually and as Successor-In-Interest to Wisconsin Industrial Testing, Inc., Latex Construction Company, Willbros Engineers (U.S.) LLC, and Tulsa Inspection Resources, Inc.*, bearing Cause No. 2008-20483 ("Underlying Action").  A copy of the Plaintiff's Original Petition in the Underlying Action is attached hereto as Exhibit "A."

## THE PARTIES

3.     National Union is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in New York, New York.

4.     Latex is a Georgia corporation with its principal place of business in Georgia.  The National Union insurance policy at issue in this action was issued to Latex in Conyers, Georgia.  Thus, Latex transacted business in this state.

## JURISDICTION AND VENUE

5.     The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because National Union and Latex are citizens of different states, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five

Thousand Dollars ($75,000). The Court further has jurisdiction under 28 U.S.C §

2201 in that National Union is seeking a declaration from this Court regarding the

parties' rights and obligations with respect to a policy of umbrella liability

insurance issued to Latex.

6.     Venue is proper in this District under 28 U.S.C. § 1391 because this

action seeks the application of a policy of commercial umbrella liability insurance

issued in the State of Georgia to Latex.

7.     Latex has a registered agent in Georgia, T.B. Elder, located at 1353

Farmer Road, Conyers, Georgia 30012. The Court has personal jurisdiction over

Latex.

## THE NATIONAL UNION INSURANCE POLICY

8.     National Union issued a policy of commercial umbrella liability

insurance to Latex bearing policy no. 6542934, effective January 1, 2008 to

January 1, 2009 (the "National Union Umbrella Policy"). A copy of the National

Union Umbrella Policy is attached to and incorporated herein as Exhibit "B".

Particular provisions of the National Union Umbrella Policy are more fully

addressed hereinafter.

## FACTS

9.    The Underlying Action is a suit on a contract with Panhandle Eastern Pipe Line Company, LP ("Panhandle"), pursuant to which Latex was required to cut, weld, assemble, place and bury a natural gas pipeline running from Tuscola, Illinois to Zionville, Indiana.  Panhandle, the plaintiff in the Underlying Action, alleges that on October 23, 2007, prior to completion of the work by Latex, the pipeline failed certain hydrostatic testing, and that the failure of the pipeline was due to inadequate welding.  Panhandle furthermore alleges that even after subsequent repairs, the pipeline failed a second round of hydrostatic testing on October 26, 2007.  Panhandle furthermore alleges that as a result of this failure of the pipeline, it was necessary to remove and reinstall all or portions of the pipeline, and that in doing so, it incurred financial loss of more than $40 million.

10.    The Underlying Action filed by Panhandle on April 9, 2008 against Latex seeks recovery from Latex (1) for alleged breach of contract; (2) for alleged breach of warranties; and (3) the payment of attorney's fees.

11.    Latex submitted first notice of a claim to National Union under the National Union Umbrella Policy on or about June 9, 2008.  Upon information and belief, Latex was thereafter served with the Petition on September 12, 2008. National Union is informed and believes that Latex is being provided with a

4

defense in the Underlying Action by its primary liability insurance carrier, Zurich American Insurance Company. In addition to defending the claims against it in the Underlying Action by Panhandle, Latex asserted a counterclaim against Panhandle for breach of contract, and seeking other equitable remedies for allegedly unpaid contract balances.

12.     Latex seeks indemnification under the National Union Umbrella Policy for the claims alleged in the Underlying Action. National Union disputes that the National Union Umbrella Policy provides coverage for the claims alleged against Latex in the Underlying Action.

13.     Actual controversies now exist between and among Latex and National Union relating to their respective legal rights and duties under the National Union Umbrella Policy.

## COUNT I

## NO DUTY TO INDEMNIFY

### (There Is No "Occurrence")

14.     Plaintiff restates and re-alleges Paragraphs 1 through 13 as though fully set forth herein.

15.     The National Union Umbrella Policy only applies to damages caused by an "Occurrence," which is defined in the Policy for purposes of "Property

Damage" coverage as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence." The Underlying Action does not involve claims for damage caused by an "Occurrence" as that term is defined in the National Union Umbrella Policy, but instead presents claims based entirely upon alleged breach of contract and alleged breach of warranties, which are not in the nature of an "accident," and therefore do not constitute an "Occurrence." Accordingly, the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.

16.    National Union is informed and believes that Latex nonetheless contends that the damages at issue in the Underlying Action were caused by an "Occurrence" as that term is defined in the National Union Umbrella Policy. As such, an actual and present dispute exists between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Policy.

17.    Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Policy, National Union is entitled to a

6

judicial determination of their respective rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT II

## NO DUTY TO INDEMNIFY

### (There Is No "Property Damage" and Potentially No "Property Damage" during the policy period)

18.     Plaintiff restates and re-alleges Paragraphs 1 through 17 as though fully set forth herein.

19.     The National Union Umbrella Policy applies to sums the insured becomes legally obligated to pay as damages because of "Property Damage" which occurs during the policy period.  "Property Damage" is defined in relevant part in the National Union Umbrella Policy as "physical injury to tangible property, including all resulting loss of use of that property . . ."  "Property Damage" also means "loss of use of tangible property that is not physically injured . . ."  The Underlying Action presents claims based entirely upon an alleged breach of contract and alleged breach of warranties, which do not constitute "Property Damage."  Accordingly, the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.  Furthermore, if the claims were for "Property Damage" within the meaning of the National Union Umbrella Policy, all or some of the damage occurred outside the policy period, and

accordingly, the National Union Umbrella Policy does not provide coverage for such damage.

20.   National Union is informed and believes that Latex nonetheless contends that the Underlying Action seeks recovery for "Property Damage" as that term is defined in the National Union Umbrella Policy, and that such damage occurred during the policy period.  As such, an actual and present dispute exists between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Umbrella Policy.

21.   Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Umbrella Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT III

## NO DUTY TO INDEMNIFY

### (Knowledge By Insured of "Property Damage" Prior to Policy Period)

22.   Plaintiff restates and re-alleges Paragraphs 1 through 21 as though fully set forth herein.

8

23.   Even where "Property Damage" during the policy period can be demonstrated, the National Union Umbrella Policy applies only if no officer or director of the insured and no employee of the insured authorized to give or receive notice under the National Union Umbrella Policy knew that the "Property Damage" had occurred, in whole or in part.  Panhandle alleges in the Underlying Action that the subject pipeline failed hydrostatic testing on October 23, 2007 and again on October 26, 2007, more than three months before the effective date of the National Union Umbrella Policy on January 1, 2008.  Accordingly, the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.

24.   National Union is informed and believes that Latex nonetheless contends that claims in the Underlying Action are covered by the National Union Umbrella Policy.  As such, an actual and present dispute exists between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Umbrella Policy.

25.   Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Umbrella Policy, National Union is entitled

9

to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT IV

## NO DUTY TO INDEMNIFY

**(Policy Exclusion For Contractual Liability Precludes Coverage)**

26.     Plaintiff restates and re-alleges Paragraphs 1 through 25 as though fully set forth herein.

27.     The National Union Umbrella Policy does not apply to and excludes coverage for "any liability assumed by the Insured under any contract or agreement."  This exclusion does not apply if coverage is provided for such liability in a policy identified in the Schedule of Underlying Insurance attached to the National Union Policy, which Schedule includes a commercial general liability policy issued by Zurich American Insurance Company ("Zurich").  Zurich denies that the liability insurance policy it issued to Latex affords coverage to Latex for the claims in the Underlying Action and seeks a declaration to this effect in a separate declaratory judgment action currently pending in this District. Accordingly, the exclusion applies, and the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.

10

28.   National Union is informed and believes that Latex nonetheless contends that coverage is afforded by the National Union Umbrella Policy and that the subject exclusion does not apply.  As such, an actual and present dispute exists between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Umbrella Policy.

29.   Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Umbrella Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT V

## NO DUTY TO INDEMNIFY

### (Policy Exclusions For Property Damage To Ongoing Operations Preclude Coverage)

30.   Plaintiff restates and re-alleges Paragraphs 1 through 29 as though fully set forth herein.

31.   The National Union Umbrella Policy does not apply to and excludes coverage for "Property Damage to property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the Insured"; furthermore excludes coverage for "Property Damage" to "that particular part of

11

real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the Property Damage arises out of those operations"; and excludes coverage for "Property Damage" to "that particular part of any property that must be restored, repaired or replaced because Your Work was incorrectly performed on it." The last of the foregoing exclusions does not apply if the Property Damage is included in the "Products-Completed Operations Hazard," which in relevant part is defined in the National Union Umbrella Policy as "Property Damage occurring away from premises you own or rent and arising out of . . . Your Work except: . . . 2. work that has not yet been completed . . ." The alleged failure of the subject pipeline and repair efforts occurred prior to completion of the work by Latex. Accordingly, to the extent Property Damage can be demonstrated and the insured's operations were not completed, it is excluded, and the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.

32. National Union is informed and believes that Latex nonetheless contends that coverage is afforded by the National Union Umbrella Policy and that the subject exclusions do not apply. As such, an actual and present dispute exists between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Umbrella Policy.

33.     Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Umbrella Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT VI

## NO DUTY TO INDEMNIFY

### (Policy Exclusion For Property Damage To Your Work Precludes Coverage)

34.     Plaintiff restates and re-alleges Paragraphs 1 through 33 as though fully set forth herein.

35.     The National Union Umbrella Policy does not apply to and excludes coverage for "Property Damage" to "Your Work arising out of it or any part of it and included in the Products-Completed Operations Hazard. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." "Your Work" is defined in the National Union Umbrella Policy to mean "1. work or operations performed by you or on your behalf; and 2. materials, parts or equipment furnished in connection with such work or operations." "Your Work" includes "1. warranties or representations made at any time with respect to the fitness, quality, durability,

performance or use of Your Work; and 2. the providing of or failure to provide warnings or instructions." "Products-Completed Operations Hazard," is defined in the National Union Umbrella Policy in relevant part as "Property Damage occurring away from premises you own or rent and arising out of . . . Your Work except: . . . 2. work that has not yet been completed . . ." Accordingly, to the extent Property Damage can be demonstrated, and to the extent the alleged failure of the subject pipeline and repair efforts occurred after completion of the work by Latex, it is excluded, and the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.

36.     National Union is informed and believes that Latex nonetheless contends that coverage is afforded by the National Union Umbrella Policy and that the subject exclusion does not apply.  As such, an actual and present dispute exists between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Umbrella Policy.

37.     Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Umbrella Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT VII

## NO DUTY TO INDEMNIFY

### (Policy Exclusions For Professional Services)

38.   Plaintiff restates and re-alleges Paragraphs 1 through 37 as though fully set forth herein.

39.   The National Union Umbrella Policy does not apply to and excludes coverage for "any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the Insured or any person for whom the Insured is legally responsible," and excludes "any liability arising out of . . . any professional services performed by or on behalf of the Insured, including but not limited to the preparation or approval of maps, shop drawings, plans, opinions, reports, surveys, field orders, change orders, designs or specifications, and any supervisory, inspection or engineering services." Accordingly, to the extent the liability of Latex arises out of professional services, it is excluded, and the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.

40.   National Union is informed and believes that Latex nonetheless contends that coverage is afforded by the National Union Policy and that the subject exclusions do not apply. As such, an actual and present dispute exists

between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Umbrella Policy.

41.    Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Umbrella Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

### COUNT VIII

### NO DUTY TO INDEMNIFY

**(Policy Exclusion For Damage to Impaired Property
or Property Not Physically Injured)**

42.    Plaintiff restates and re-alleges Paragraphs 1 through 41 as though fully set forth herein.

43.    The National Union Umbrella Policy does not apply to and excludes coverage for "Property Damage to Impaired Property or property that has not been physically injured, arising out of: 1. a defect, deficiency, inadequacy or dangerous condition in . . . Your Work; or 2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.  This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to . . . Your Work after it has been put to its intended

use." "Impaired Property" is defined under the National Union Umbrella Policy to mean "tangible property, other than . . . Your Work, that cannot be used or is less useful because: 1. it incorporates . . . Your Work that is known or thought to be defective, deficient, inadequate or dangerous; or 2. you have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by: 1. the repair, replacement, adjustment or removal of . . . Your Work; or 2. your fulfilling the terms of the contract or agreement." "Your Work" is defined under the National Union Umbrella Policy to mean "1. work or operations performed by you or on your behalf; and 2. materials, parts or equipment furnished in connection with such work or operations.   Your Work includes: 1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Work; and 2. the providing of or failure to provide warnings or instructions." Accordingly, to the extent Property Damage can be demonstrated, it is excluded, and the National Union Umbrella Policy does not provide coverage for the claims at issue in the Underlying Action.

44.    National Union is informed and believes that Latex nonetheless contends that coverage is afforded by the National Union Policy and that the subject exclusion does not apply.  As such, an actual and present dispute exists

between National Union and Latex as to whether the claims at issue in the Underlying Action are covered under the National Union Umbrella Policy.

45. Inasmuch as an actual and present controversy currently exists between National Union and Latex concerning their respective rights and obligations under the National Union Umbrella Policy, National Union is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

WHEREFORE, National Union respectfully prays that it be granted a trial by jury as to all appropriate issues, and requests that this Court enter an order:

1. Declaring that National Union has no duty to defend or indemnify Latex for the claims at issue in the Underlying Action on the grounds that the Underlying Action does not allege claims for damages caused by an "Occurrence";

2. Declaring that National Union has no duty to defend or indemnify Latex for the claims at issue in the Underlying Action on the grounds that the Underlying Action does not allege claims for "Property Damage" or "Property Damage" occurring during the period of the National Union Umbrella Policy of which the insured had no knowledge prior to the effective date of coverage;

3.     Declaring that National Union has no duty to defend or indemnify Latex for the claims at issue in the Underlying Action on the grounds that the claims are precluded from coverage pursuant to one or more policy exclusions contained in the National Union Umbrella Policy;

4.     For costs of suit incurred herein; and

5.     For other such relief as this court deems just and proper.

Dated:  October 26, 2010.

_____
John C. Bonnie, Esq.
Georgia Bar No. 067540
Nancy F. Rigby, Esq.
Georgia Bar No. 605453
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC
3344 Peachtree Road NE,
Suite 2400
Atlanta, Georgia 30326
**Counsel for National Union Fire Insurance Company of Pittsburgh, Pa.**

# EXHIBIT A




2008-20483

CAUSE NO. _____

| | | |
|---|---|---|
| PANHANDLE EASTERN PIPE LINE COMPANY, LP, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff | § § § | |
| V. | § § | |
| ACUREN INSPECTION, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO WISCONSIN INDUSTRIAL TESTING, INC., LATEX CONSTRUCTION COMPANY, WILLBROS ENGINEERS (U.S.), LLC, AND TULSA INSPECTION RESOURCES, INC. | § § § § § § § § § | HARRIS COUNTY, TEXAS |
| Defendants | § § | |

Plaintiff 2008-20483

269 JUDICIAL DISTRICT

FILED
THERESA CHANG
DISTRICT CLERK
HARRIS COUNTY, TEXAS
2008 APR -3 PM 2:50
BY_____ DEPUTY

4/3/08

### PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff, Panhandle Eastern Pipe Line Company, LP, files this Original Petition complaining of Defendants Acuren Inspection, Inc. (Individually and as Successor-in-Interest to Wisconsin Industrial Testing, Inc.), Latex Construction Company, Willbros Engineers (U.S.), LLC (f/k/a Willbros Engineers, Inc.) and Tulsa Inspection Resources, Inc. (collectively "Defendants") and respectfully show the Court as follows:

I.
### DISCOVERY

1.   Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.3 because of the complex nature of the lawsuit and the number of parties involved.

Certified Document Number: 37057858 - Page 1 of 244

192270

## II.
## PARTIES

2.      Plaintiff, PANHANDLE EASTERN PIPE LINE COMPANY, LP ("Panhandle"),
is a Delaware Limited Partnership with its principal place of business in Harris County, Texas.

3.      Defendant ACUREN INSPECTION, INC., individually and as Successor-in-
Interest to WISCONSIN INDUSTRIAL TESTING, INC. ("Acuren"), is a corporation organized
and existing under the laws of the State of Delaware, with its principal place of business in the
State of Texas, and is authorized to do business in the State of Texas.  Acuren may be served
with process by serving its registered agent for service of process, Prentice Hall Corporation, at
701 Brazos Street, Suite 1050, Austin, Travis County, Texas 78701.

4.      Defendant LATEX CONSTRUCTION COMPANY ("Latex") is a corporation
organized and existing under the laws of the State of Georgia, with its principal place of business
in the State of Georgia, and is authorized to do business in the State of Texas.  Latex may be
served with process by serving its registered agent for service of process, CT Corporation
System, at 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201.

5.      Defendant WILLBROS ENGINEERS (U.S.), LLC (f/k/a Willbros Engineers,
Inc.) ("Willbros") is a limited liability company organized and existing under the laws of the
State of Delaware, with its principal place of business in the State of Texas, and is authorized to
do business in the State of Texas.  On or about January 28, 2008, Willbros Engineers, Inc.
converted to a limited liability company named "Willbros Engineers (U.S.) LLC."  Willbros may
be served with process by serving its registered agent for service of process, National Registered
Agents, Inc., at 16055 Space Center, Suite 235, Houston, Harris County, Texas 77062.

6.      Defendant TULSA INSPECTION RESOURCES, INC. ("Tulsa Inspection") is a
corporation organized and existing under the laws of the State of Oklahoma, with its principal

Certified Document Number: 37057858 - Page 2 of 244

192270

place of business in the State of Oklahoma, and is authorized to do business in the State of Texas.  Tulsa Inspection may be served with process by serving its registered agent for service of process, National Registered Agents, Inc., at 16055 Space Center, Suite 235, Houston, Harris County, Texas 77062.

## III.
## JURISDICTION

7.      This Court has jurisdiction over the lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

8.      This Court has jurisdiction over Acuren, a nonresident, because Acuren has purposefully availed itself of the privileges and benefits of conducting business in the State of Texas by, among other things, engaging in business in Texas, contracting with a Texas resident and contractually agreeing to exclusive jurisdiction in Texas.

9.      This Court has jurisdiction over Latex, a nonresident, because Latex has purposefully availed itself of the privileges and benefits of conducting business in the State of Texas by, among other things, engaging in business in Texas, contracting with a Texas resident and contractually agreeing to exclusive jurisdiction in Texas.

10.      This Court has jurisdiction over Willbros, a nonresident, because Willbros has purposefully availed itself of the privileges and benefits of conducting business in the State of Texas by, among other things, engaging in business in Texas, contracting with a Texas resident and contractually agreeing to exclusive jurisdiction in Texas.

11.      This Court has jurisdiction over Tulsa Inspection, a nonresident, because Tulsa Inspection has purposefully availed itself of the privileges and benefits of conducting business in the State of Texas by, among other things, engaging in business in Texas, contracting with a Texas resident and contractually agreeing to exclusive jurisdiction in Texas.

192270

Certified Document Number: 37057858 - Page 3 of 244

## IV.
## VENUE

12.    Venue for this suit is proper in Harris County, Texas, under Texas Civil Practice and Remedies Code section 15.002 because Acuren and Willbros, both corporations, maintain their principal offices in Texas in Harris County. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3).

13.    Venue is also proper in Harris County, Texas because one or more Defendants contractually agreed to exclusive venue in the courts of Harris County, Texas.

14.    Venue is also proper in Harris County, Texas under Texas Civil Practice and Remedies Code section 15.005 in this suit against multiple defendants because all of Panhandle's claims or actions in this lawsuit arise out of the same transaction, occurrence, or series of transactions or occurrences.  Specifically, all of Panhandle's claims in this lawsuit arise out of the construction and subsequent hydrostatic test failures of the pipeline which was the subject of Panhandle's PEPL East End Enhancement Project ("PEPL East End Project").  Defendants all contracted to provide services to Panhandle on the PEPL East End Project.

## V.
## CONDITIONS PRECEDENT

15.    All conditions precedent have been performed or have occurred.

## VI.
## FACTUAL ALLEGATIONS

16.    Panhandle seeks damages arising from Defendants' breaches of multiple contracts entered into for the purpose of the construction of a natural gas pipeline as part of Panhandle's PEPL East End Project, as well as for Defendants' various breaches of warranties regarding the work performed.

192270

Certified Document Number: 37057858 - Page 4 of 244

17.    Panhandle operates a 6,500-mile natural gas pipeline system throughout the midwestern and southern United States.    Panhandle's customer base includes some of the nation's largest utility and industrial natural gas users.

18.    On or about July 2007, Panhandle began to organize the PEPL East End Project to enhance its natural gas pipeline stretching from Tuscola, Illinois to Zionsville, Indiana.    The PEPL East End Project involved the installation of approximately 31 miles of new pipe in three separate sections—6.7 miles of pipe in Tuscola, Illinois, 6.7 miles of pipe in Montezuma, Indiana and 18 miles of pipe in Zionsville, Indiana.    The target completion date for the project was November 1, 2007.

19.    Panhandle entered into a contract with Latex whereby Latex agreed to provide labor in constructing the additional segments of the pipeline.[1]    Specifically, Latex (an independent contractor) provided services such as the assembly of the pipe—including cutting and welding—as well as the placement of the pipe in trenches and subsequent burial.

20.    Panhandle also entered into contracts with Willbros and Tulsa Inspection (collectively the "Inspector Defendants") whereby these companies agreed to provide inspection services to Panhandle and oversee the construction and assembly of the pipeline.[2]    Specifically, the Inspector Defendants were obligated to oversee the daily progress of the construction work on the PEPL East End Project and ensure proper execution.

21.    Panhandle also entered into a contract with Wisconsin Industrial Testing, Inc. (which was subsequently purchased by Acuren) as well as a corresponding Activation Order

_____

[1] True and correct copies of the Construction Agreement dated June 1, 2007 and corresponding Work Order are attached hereto as Exhibit A and fully incorporated herein by reference.

[2] A true and correct copy of the Corporate Alliance Agreement dated January 1, 2001 between Panhandle and Willbros is attached hereto as Exhibit B and fully incorporated herein by reference.    Willbros served as the construction manager for the PEPL East End Project.    Tulsa Inspection similarly contracted to provide inspection and construction services in a good and workmanlike manner in accordance with recognized industry standards.

192270

Certified Document Number: 37057858 - Page 5 of 244

with Acuren whereby these companies agreed to provide radiographic inspection of all welds made in the assembly of the pipeline.[3]  Specifically, before the pipeline was placed underground by Latex, Acuren was required to radiographically inspect all welds and verify that they were proper and sufficient to ensure pipeline functionality.

22.     A substantial amount of work had been performed on the PEPL East End Project before problems became apparent shortly before the target completion date.   On or about October 23, 2007, after much of the new pipe had already been welded, radiographically inspected, put in place and buried, a segment of the new pipeline failed a standard hydrostatic test.  For new pipeline construction, such a failure is extremely rare.  Repairs were made; on or about October 26, 2007, however, the same segment of pipe failed a second hydrostatic test.

23.     As a result of these unusual failures, Panhandle suspended further operations on the PEPL East End Project to determine the cause of the hydrostatic test failures.  Panhandle was forced to reexamine every girth weld on the 31 miles of new pipe.  This effort was hampered by the loss of several of Acuren's radiographic films of the various welds, but it ultimately revealed the failure of an inordinately high number of such welds.

24.     Panhandle was able to repair some of the weld problems on pipe that had not yet been put in place and buried, but the majority of the inadequate welds were found on segments of pipe that had already been buried.  The cost of unearthing these segments and repairing the weld failures—many of which were found in populous suburban areas—was substantial.  Indeed, the improper welds and subsequent repair efforts have—or will—cost Panhandle more than $40 million.

---

[3] True and correct copies of the Corporate Services Agreement dated January 1, 2001 and corresponding Activation Order with Acuren are attached hereto as Exhibit C and fully incorporated herein by reference.

192270

6

Certified Document Number: 37057858 - Page 6 of 244

## CAUSES OF ACTION
### VII.
### BREACH OF CONTRACT

25.     All of the allegations contained in the previous paragraphs are realleged herein.

26.     Panhandle has performed its obligations under the contracts relating to the PEPL East End Project or performance of such obligations has been excused by Defendants' material breaches. Panhandle has satisfied all conditions precedent to Defendants' obligations under the contracts.

27.     Acuren failed to provide radiographic inspection services of the girth welds in a good and workmanlike manner in accordance with recognized industry standards as required under their contracts. Acuren also failed to fulfill its indemnity obligations under the contract's indemnity provision.

28.     Latex failed to provide functional girth welds and additionally failed to provide services in a good and workmanlike manner in accordance with recognized industry standards as it was required to do under its contract. Latex further failed to fulfill its obligations under the contract's indemnification provision.

29.     The Inspector Defendants failed to provide inspection services in a good and workmanlike manner in accordance with recognized industry standards as required under their contracts, and further failed to fulfill their obligations under the indemnification provisions of their agreements.

30.     Panhandle has incurred direct and consequential damages, including lost profits, as a result of the Defendants' failures to comply with their obligations under the contracts. Panhandle has repeatedly demanded that Acuren and Latex reimburse Panhandle for the

Certified Document Number: 37057858 - Page 7 of 244

192270

7

reasonable and necessary expenses incurred in repairing the girth welds and pipeline as a direct result of their breaches of contract, yet they have failed to remedy the situation.

31.     For the reasons stated above, Panhandle requests that the Court enter judgment against Defendants for damages suffered by Panhandle as a direct and consequential result of Defendants' breach of the contracts, reasonable attorney's fees, pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief which the Court deems appropriate.

## VIII.
## BREACH OF WARRANTIES

32.     All of the allegations contained in the previous paragraphs are realleged herein.

33.     Notwithstanding their contractual failures, Defendants have all also breached the implied warranty of good and workmanlike performance in the repair and modification of tangible goods.   Defendants were hired to construct, or assist in the construction of, approximately 31 miles of pipeline as part of the PEPL East End Project.  Latex failed to provide adequate welds and the Inspector Defendants and Acuren all failed to discover same before the new pipeline was buried.

34.     As a result of these failures, Panhandle has incurred direct and consequential damages, including lost profits, while repairing the new pipeline to make it functional.

35..     For the reasons stated above, Panhandle requests that the Court enter judgment against Defendants for damages suffered by Panhandle as a direct and consequential result of Defendants' breach of warranties, pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief which the Court deems appropriate.

## IX.
## ATTORNEYS' FEES

36.     All of the allegations contained in the previous paragraphs are realleged herein.

Certified Document Number: 37057858 - Page 8 of 244

192270

37.     Panhandle has retained the law firm of KASOWITZ, BENSON, TORRES & FRIEDMAN LLP to represent it in this action and has agreed to pay the firm its reasonable and necessary attorneys' fees.  Panhandle is entitled to recover its reasonable and necessary attorneys' fees expended in the prosecution of this lawsuit. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.009, 38.001(8).

## X.
## DEMAND FOR JURY

38.     Panhandle demands a jury trial and tenders the appropriate fee with this petition.

## XI.
## PRAYER

Wherefore, Plaintiff Panhandle Eastern Pipe Line Company, LP prays that the Court (i) award Panhandle damages in an amount in excess of the minimum jurisdiction of the Court; (ii) award Panhandle attorney's fees and expenses incurred and to be incurred in the prosecution of this suit; (iii) tax the costs of the suit and proceedings against Defendants; and (iv) award Panhandle such other and further relief to which it may show itself entitled at law or in equity.

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____
Jerry L. Mitchell
State Bar No. 14214650
Michael Wilson
State Bar No. 24047125
700 Louisiana Street, Suite 2200
Houston, Texas 77002-2730
(713) 220-8800
(713) 222-0843 (Facsimile)

ATTORNEYS FOR PLAINTIFF PANHANDLE
EASTERN PIPE LINE COMPANY, LP

Certified Document Number: 37057858 - Page 9 of 244

192270

9

# EXHIBIT B

# POLICY COVER PAGE

**Date Printed:** 01/15/08             **Policy/Quote Number:**    6542934
**Time Printed:** 000001

| | |
|---|---|
| **Underwriter Name:** | ANNA STEPHANOS |
| **Issuing Office Division:** | 0008 |
| **Issuing Office Branch:** | 0007 |
| **Issuing Office Region:** | |
| **Operator Name:** | DAVIS          ,CHRYSTAL |
| **Operator Telephone:** | 913-495-3390 |
| **Policy Effective Date:** | January 1, 2008 |
| **Transaction Type:** | NB |
| **Set Copy Name:** | |
| **Set Copy Mailing Instructions:** | |

```
EPS TRACKING-ID:   0001296940000008015
JOB-ID:
```

*Archive Copy*

(Ed. 4-99)

**AMERICAN INTERNATIONAL COMPANIES**

1200 ABERNATHY ROAD NE
NORTH PARK TOWN CENTER BLDG 600
ATLANTA, GA 30328

Re:  LATEX CONSTRUCTION COMPANY INC

PHIL LEEK @
WILLIS INSURANCE SERVICES
1 GLENLAKE PKWY NE
#  1100
ATLANTA, GA 30328-3517

AH1079

*Archive Copy*

**AMERICAN INTERNATIONAL COMPANIES**                                          January 15, 2008

1200 ABERNATHY ROAD NE
NORTH PARK TOWN CENTER BLDG 600
ATLANTA, GA 30328

Attn:  PHIL LEEK
       WILLIS INSURANCE SERVICES
       1 GLENLAKE PKWY NE
       #  1100
       ATLANTA, GA 30328-3517

**AIG**

AIG Excess Casualty℠

RE:  LATEX CONSTRUCTION COMPANY INC

       Policy Number:  BE     6542934
       Policy Effective/Expiration:  From:  January 1, 2008          To:  January 1, 2009

Dear PHIL,

Enclosed are one original and one copy of the policy for the above captioned account.  Upon review of the policy, we believe it is complete and accurate based upon the binder.  However, if you have any questions or concerns, feel free to give me a call.

Thank you for the opportunity to be of service to your company on this account.  We look forward to working with you on future opportunities.

Best regards,

ANNA STEPHANOS
SENIOR UNDERWRITER
770-671-2000

AH0800 (06/01)         *Archive Copy*                                          Page  1

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)      *Archive Copy*

## FORMS SCHEDULE

**Named Insured:**    LATEX CONSTRUCTION COMPANY INC

**Policy Number:**    BE    6542934
**Effective 12:01 AM:**  January 1, 2008

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | UMB PRIME DEC | 80518 | (10/04) |
| | UMB PRIME JACKET | 80517 | (05/06) |
| | SCHEDULE OF UNDERLYING | UNDSCH | (05/99) |
| | PREM INCL TERRORISM NOTICE | 81249 | (03/03) |
| 1 | FOREIGN LIABILITY EXCLUSION | 80431 | (07/02) |
| 2 | EMPLOYEE BENEFITS LIAB LIMIT (CM) | 83073 | (09/03) |
| 3 | NAMED PERIL SIR POLLUTION ENDT | 80464 | (06/03) |
| 4 | FAILURE TO SUPPLY ENERGY EXCLUSION | 80427 | (07/02) |
| 5 | SILICA EXCLUSION ENDT | 80479 | (02/03) |
| 6 | RADIOACTIVE MATTER EXCL | 83094 | (09/03) |
| 7 | PROFESSIONAL LIABILITY EXCL | 83093 | (09/03) |
| 8 | MTBE AND OTHER FUEL OXYGENATES EXCLUSION ENDT | 80449 | (02/03) |
| 9 | MARINE LIAB. EXCL. ENDT. | 86470 | (08/04) |
| 10 | LEAD EXCL. ENDT. | 86471 | (08/04) |
| 11 | FUNGUS EXCLUSION ENDT | 82449 | (06/03) |
| 12 | EIFS EXCLUSION | 80423 | (09/03) |
| 13 | CONTRACTORS LIMITATION | 80409 | (07/02) |
| 14 | ANTI-STACKING ENDT | 80394 | (09/03) |
| 15 | AIRCRAFT PROD. AND GROUNDING EXCL END. | 86428 | (08/04) |
| 16 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 17 | GEORGIA AMENDATORY ENDT | 52138 | (07/95) |
| 18 | DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUI | 83687 | (09/07) |
| 19 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDORSEMENT | 94621 | (05/07) |
| 20 | Georgia Notice - Uninsured/Underinsured Motorists | 91824 | (11/06) |
| 21 | EL FOR OCCUPATIONAL DISEASE | 83072 | (09/03) |
| 22 | ATHLETIC ACTIVITIES EXCLUSION | 80396 | (07/02) |

*Archive Copy*

**AIG** AMERICAN INTERNATIONAL COMPANIES®

## Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

### DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | | | |
|---|---|---|---|
| ☐ | AIG Casualty Company | ☐ | Granite State Insurance Company |
| ☐ | AIU Insurance Company | ☐ | Illinois National Insurance Company |
| ☐ | American Home Assurance Company | ☐ | National Union Fire Insurance Company of Louisiana |
| ☐ | American International Pacific Insurance Company | ☒ | National Union Fire Insurance Company of Pittsburgh, Pa. |
| ☐ | American International South Insurance Company | ☐ | New Hampshire Insurance Company |
| ☐ | Commerce & Industry Insurance Company | ☐ | The Insurance Company of the State of Pennsylvania |

(each of the above being a capital stock company)

**Executive Offices: 70 Pine Street, New York, NY 10270**
**Telephone No. 212-770-7000**

POLICY NUMBER: BE   6542934          RENEWAL OF: NEW

ITEM 1. NAMED INSURED:   LATEX CONSTRUCTION COMPANY INC

MAILING ADDRESS:   1353 FARMER RD NW
CONYERS, GA 30012

ITEM 2. POLICY PERIOD: FROM:   January 1, 2008          TO:   January 1, 2009
(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)

ITEM 3. LIMITS OF INSURANCE

The Limits of Insurance, subject to the terms of this policy, are:

A. $25,000,000      **Each Occurrence**
B. $25,000,000      **General Aggregate** (in accordance with Section IV. Limits of Insurance)
C. $25,000,000      **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)
D. $250,000        **CrisisResponse Sublimit of Insurance**
E. $50,000         **Excess Casualty CrisisFund Limit of Insurance**

ITEM 4. SCHEDULED UNDERLYING INSURANCE -

ITEM 5. SELF-INSURED RETENTION -  $10,000          **Each Occurrence**

ITEM 6. PREMIUM AND PREMIUM COMPUTATION
ESTIMATED TOTAL ANNUAL EXPOSURE          NOT APPLICABLE
RATES PER                                FLAT
MINIMUM PREMIUM                          $630,194.00
ADVANCE PREMIUM                          $630,194.00

ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE

PRODUCER NAME:  WILLIS INSURANCE SERVICES
ADDRESS:        1 GLENLAKE PKWY NE
# 1100
ATLANTA, GA 30328-3517

_____          _____
Authorized Representative or            Date
Countersignature (Where Applicable)

80518 (10/04)
AH0876          *Archive Copy*          Issue Date:  01/15/08

**Umbrella Prime®**
**Commercial Umbrella Liability Policy With CrisisResponse®**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning. See Section VII. Definitions.

___

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

| **I.   INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** |
|---|

A.   We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.   This policy applies, only if:

1.   the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2.   the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C.   1.   This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

2.   **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D.   **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    1.  reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

    2.  receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

    3.  becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

E.  Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F.  If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

---

## II.  INSURING AGREEMENT-CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

A.  **CrisisResponse**

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B.  **Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C.  A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D.  There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E.  Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

---

## III.  DEFENSE PROVISIONS

A.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

    1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

    2.  the damages sought because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

Page 2 of 24  
*Archive Copy* © 2001 American International Group, Inc.  
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

   1. investigate, negotiate and settle the **Suit** as we deem expedient; and

   2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

      a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

      b. premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

      c. all court costs taxed against the **Insured** in the **Suit**;

      d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

      e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

      f. the **Insured's** expenses incurred at our request or with our consent.

D. Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

E. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

   1. **Insureds**;

   2. claims made or **Suits** brought;

   3. persons or organizations making claims or bringing **Suits**; or

   4. coverages provided under this policy.

B. The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

   1. damages included within the **Products-Completed Operations Hazard**; and

   2. damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

*Archive Copy* 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

C. The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

D. Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence.**

E. Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract.**

F. This policy applies only in excess of the **Retained Limit.** If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

  1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

  2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

  1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

  2. in the event of exhaustion, continue in force as underlying insurance.

H. Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy.   Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance,** then such expenses will reduce the applicable Limits of Insurance of this policy.

I. The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period.** This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J. The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period.** This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K. We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M. We will not make any payment under this policy unless and until:

  1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss**; or

2.  the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

---

## V.  EXCLUSIONS

### A.  Aircraft and Watercraft

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

### B.  Asbestos

This insurance does not apply to any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### C.  Contractual Liability

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

b. such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

**D. Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**E. Damage to Property**

This insurance does not apply to **Property Damage** to:

1. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of the **Insured**;

5. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard.**

**F. Damage to Your Product**

This insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

**G. Damage to Your Work**

This insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H. Electronic Chatrooms or Bulletin Boards and Electronic Data**

*Archive Copy* ©2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control. Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I.   **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury:**

1.   to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.   to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3.   for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4.   arising out of his or her providing or failing to provide professional health care services.

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury** or **Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance.** Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance,** subject to the **Policy Period,** Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

J.   **Employment Practices**

This insurance does not apply to any liability arising out of:

1.   failure to hire any prospective employee or any applicant for employment;

2.   dismissal, discharge or termination of any employee;

3.   failure to promote or advance any employee; or

4.   employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

    a.   coercion, harassment, humiliation or discrimination;
    b.   demotion, evaluation, reassignment, discipline, or retaliation;
    c.   libel, slander, humiliation, defamation, or invasion of privacy; or
    d.   violation of civil rights.

This exclusion applies:

1.   whether the **Insured** may be liable as an employer or in any other capacity; and

2.   to any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M. **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

N. **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1., U2. and U3. of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O. **"No-Fault, " "Uninsured Motorist" or "Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P. **Nuclear Liability**

This insurance does not apply to:

1. any liability:

*Archive Copy* ©2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

a.  with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.  for **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

   i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

   ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

2.  As used in this exclusion:

a.  "hazardous properties" includes radioactive, toxic or explosive properties;

b.  "nuclear material" means source material, special nuclear material or by-product material;

c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto ;

d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.  "nuclear facility" means:

   i)   any nuclear reactor;

   ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

   iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

   includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

80517 (5/06)
AH2007

*Archive Copy* 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

g.  "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.  **Property Damage** includes all forms of radioactive contamination of property.

## Q.  Pollution

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.  Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1)  **Products-Completed Operations Hazard**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a)  discarded, dumped, abandoned, thrown away; or

b)  transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2)  **Hostile Fire**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3)  **Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations**

Paragraph 1. of this exclusion does not apply to:

a)  **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

b)  **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4)  **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1. of this exclusion does not apply to:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product;**

2. **Your Work; or**

3. **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This insurance does not apply to any liability arising out of:

1.  any violation of any securities law or similar law or any regulation promulgated thereunder;

2.  the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3.  any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4.  any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

## T.  Unauthorized Use of Another's Name or Product

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

## U.  Various Personal Injury and Advertising Injury

This insurance does not apply to **Personal Injury and Advertising Injury**:

1.  caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2.  arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3.  arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4.  arising out of a criminal act committed by or at the direction of the **Insured**;

5.  for which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6.  arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7.  arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8.  arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

## V.  Various Laws

This insurance does not apply to any obligation of the **Insured** under any of the following:

1.  the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2.  any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

## W.  Violation of Communication or Information Law

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

X.  **War**

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1.  Civil war; or

2.  Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## VI.  CONDITIONS

A.  **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so.  If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B.  **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C.  **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy.   But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D.  **Cancellation**

1.  You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium.  Our check

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E. Change In Control

If during the **Policy Period**:

1. the first **Named Insured** designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2. any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.

Coverage will be afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1. of the Declarations or the end of the **Policy Period**, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

## F. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

## G. Duties in the Event of an Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and any witnesses; and

   c. the nature and location of any injury or damage arising out of the **Occurrence**.

2. If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

   Written notice should be mailed, delivered, faxed or emailed to:

AIG Domestic Claims, Inc.
Excess Casualty Claims Department
Segmentation Unit
175 Water Street, 22nd Floor
New York, NY 10038
Fax: (866) 743-4376
Email: excessfnol@aig.com

3. You and any other involved **Insured** must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

   b. authorize us to obtain records and other information;

   c. cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4. No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## H. Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

## I. Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

## J. Legal Actions Against Us

No person or organization has a right under this policy:

1. to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2. to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

## K. Maintenance of Scheduled Underlying Insurance

You agree that during the **Policy Period**:

1. you will keep **Scheduled Underlying Insurance** in full force and effect;

2. the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3.  the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4.  any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

**L.  Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

**M.  Premium**

The first **Named Insured** designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6. of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the **Policy Period**.

**N.  Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1. of the Declarations, this insurance applies:

1.  as if each **Named Insured** were the only **Named Insured**; and

2.  separately to each **Insured** against whom claim is made or **Suit** is brought.

**O.  Transfer of Rights of Recovery**

1.  If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2.  Any recoveries will be applied as follows:

    a.  any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

    b.  we then will be reimbursed up to the amount we have paid; and

    c.  lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

P. **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q. **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R. **Violation of Economic or Trade Sanctions**

If coverage for a claim or **Suit** under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

## VII. DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means:

1. a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2. any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

2. significant adverse regional or national media coverage.

80517 (5/06)
AH2007

*Archive Copy*

Page 17 of 24
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E.   **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event.**

F.   **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event:**

   1.   amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event;** and

   2.   amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm,** solely arising from a covered **Crisis Management Event.**

G.   **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured.**

H.   **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event,** provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

   1.   medical expenses;

   2.   funeral expenses;

   3.   psychological counseling;

   4.   travel expenses;

   5.   temporary living expenses;

   6.   expenses to secure the scene of a **Crisis Management Event;** and

   7.   any other expenses pre-approved by the Company.

   **CrisisResponse Costs** does not include defense costs or **Crisis Management Loss.**

I.   **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D. of the Declarations.

J.   **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K.   **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L.   **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

   1.   it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   2.   you have failed to fulfill the terms of a contract or agreement;

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

M. **Insured** means:

1. the **Named Insured**;

2. if you are designated in the declarations as:

   a. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

   b. a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. a limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers;

   d. an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

   e. a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4. your volunteer workers only while performing duties related to the conduct of your business;

5. any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6. your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7. any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

   a. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

   b. no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

N. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

1.  that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3.  under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

O.  **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship).  A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P.  **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

Q.  **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

a.  equipment designed primarily for:

*Archive Copy* © 2001 American International Group, Inc.<br>Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    i)    snow removal;

    ii)   road maintenance, but not construction or resurfacing; or

    iii)  street cleaning;

b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos.**

R.  **Named Insured** means:

1.  any person or organization designated in Item 1. of the Declarations;

2.  as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

    a.  coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    b.  you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance.** If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured**, under the highest applicable limit of **Scheduled Underlying Insurance.**

S.  **Occurrence** means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence.**

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury.** All damages that arise from the same, related or repeated injurious

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T.  **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

U.  **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  the use of another's advertising idea in your **Advertisement**; or

7.  infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V.  **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

W.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

X.  **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

    a.  when all of the work called for in your contract has been completed;

    b.  when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

    c.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2.  the existence of tools, uninstalled equipment or abandoned or unused materials.

Y.  **Property Damage** means:

1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.  **Retained Limit** means:

1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2.  the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA.  **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB.  **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC.  **Suit** means a civil proceeding in which damages because of **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

1.  an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2.  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD.  **Your Product** means:

1.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.  you;

    b.  others trading under your name; or

    c.  a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE. **Your Work** means:

1 work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.

_____              _____
Secretary                                    President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

_____
Authorized Representative

## Commercial Umbrella Liability Policy with CrisisResponse[SM]
## <u>SCHEDULE OF UNDERLYING INSURANCE</u>

Issued to: LATEX CONSTRUCTION COMPANY INC                     Policy Number: BE     6542934

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY<br>OR COVERAGE | INSURER, POLICY NO.<br>AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | Zurich American Insurance Comp<br>01/01/08<br>01/01/09 | $1,000,000<br>EACH OCCURRENCE<br>$2,000,000<br>GENERAL AGGREGATE<br>$2,000,000<br>PER LOCATION AGGREGATE<br>$2,000,000<br>PER PROJECT AGGREGATE<br>$2,000,000<br>PRODUCTS/C. OPS. AGGREGATE<br><br>Defense Expenses are in addition to the limit |
| AUTO LIABILITY | Zurich American Insurance Comp<br>01/01/08<br>01/01/09 | $1,000,000<br>COMBINED SINGLE LIMIT<br><br><br>Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY | Zurich American Insurance Comp<br>01/01/08<br>01/01/09 | $1,000,000<br>EACH ACCIDENT<br>$1,000,000<br>DISEASE EACH EMPLOYEE<br>$1,000,000<br>DISEASE POLICY LIMIT<br><br>Defense Expenses are in addition to the limit |
| EMPLOYEE BENEFITS LIABILITY | Zurich American Insurance Comp<br>01/01/08<br>01/01/09 | $1,000,000<br>EACH OCCURRENCE<br><br><br>Defense Expenses are in addition to the limit |

AUTHORIZED REPRESENTATIVE

UNDSCH (5/99)
AH0006          *Archive Copy*

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceeding the Act of Terrorism.

Coverage for Acts of Terrorism for losses is already included in your current policy. The portion of your annual premium that is attributable to coverage for Acts of Terrorism covered by the Act is $6,240.00.

LATEX CONSTRUCTION COMPANY INC

Insured Name

BE   6542934

Policy #

0008

Division #

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Insurance Carrier

WITHOUT EXCLUSION BUT WITH CHARGE
81249 (3/03)
AH0992        *Archive Copy*

**ENDORSEMENT No. 1**

This endorsement, effective 12:01 AM:  January 1, 2008

Forms a part of policy no:  BE     6542934

Issued to:  LATEX CONSTRUCTION COMPANY INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse$^{SM}$**

**Foreign Liability Exclusion**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Foreign Liability**

This insurance does not apply to **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80431 (07/02)
AH0917

*Archive Copy*

**ENDORSEMENT No. 2**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.:** BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Liability Policy with CrisisResponse®

**Employee Benefits Liability Limitation Claims Made Version Endorsement**

**NOTICE: Please read this endorsement carefully.  This endorsement provides coverage on a claims made basis.  Except to the extent as may otherwise be provided herein, the coverage of this insurance is generally limited to liability for only those claims that are first made during the Policy Period and reported in writing to us.**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1.  any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2.  any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

    a.  giving counsel to employees with respect to a **Plan**;

    b.  interpreting a **Plan**;

    c.  handling of records in connection with a **Plan**;

    d.  effecting enrollment, termination or cancellation of employees under a **Plan**; or

    e.  any claim against an **Insured** solely by reason of his, her or its status as an administrator, the **Plan** or you as sponsor of the **Plan**.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by **Scheduled Underlying Insurance.**

Solely as respects this endorsement, this policy will only provide coverage for a **Claim** made against the **Insured** during the **Policy Period**:

   a)  If the insurance provided by **Scheduled Underlying Insurance** provides coverage for **Occurrences** occurring on or after a specified Retroactive Date for a claim for damages because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** first made in writing against any **Insured** in accordance with Paragraph b) below during the **Policy Period** or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

b) A **Claim** by any person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   1. When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period; or

   2. When we make settlement in accordance with Paragraph a) above.

Notwithstanding the above, this insurance shall not apply to:

1. any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date set forth in the **Schedule Underlying Insurance**, if the **Insured**, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an **Occurrence**, knew as of the Continuity Date shown above that such **Occurrence** could result in a **Claim**.

2. any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrences** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3. any **Claim** alleging or arising out of any **Claim** or **Suit** pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or **Suit**.

If **Scheduled Underlying Insurance** does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Claim** means a written demand upon the **Insured** for compensatory damages or services and shall include the service of **Suit** or institution of arbitration proceedings against the **Insured**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **Plan** is subject.

**Plan** means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. and 2. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 3

**This endorsement, effective 12:01 AM:** January 1, 2008

**Forms a part of policy no:** BE    6542934

**Issued to:** LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[SM]

**Named Peril Pollution
Self-Insured Retention Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1. Any **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, automatic sprinkler leakage, collision or upset of an **Auto** or **Mobile Equipment** or aircraft.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

i.   Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

ii.  Any fines or penalties;

iii. Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement. However, this provision iii shall not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

iv.  Acid rain or acid runoff;

v.   Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said **Pollutants**; or

vi. Any **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury**, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$1,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** covered under this endorsement). This **Self-Insured Retention** will not be reduced by **Defense Expenses**.

The above **Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the above **Self-Insured Retention** if such policies were purchased by the **Named Insured** to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the above **Self-Insured Retention**.

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and Paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this endorsement may apply. If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** means a payment allocated to defend a specific **Suit**, including but not limited to:

1. Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Court costs taxed against the **Insured** in any **Suit**;

5. Pre-judgment interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

**ENDORSEMENT No. 4**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no:**  BE        6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[SM]

**Failure to Supply Energy Exclusion**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following exclusion:

**Failure to Supply Energy**

This insurance does not apply to any liability arising out of any **Insured's** complete or partial failure to supply gas, oil, water, electricity or steam.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_Vincent Catapano_
_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80427 (07/02)
AH0914

*Archive Copy*

**ENDORSEMENT No. 5**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no:** BE      6542934

**Issued to:** LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Silica Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of **Silica**, **Silica** fiber(s) or **Silica Dust** or any product(s) containing **Silica**, **Silica** fiber(s) or **Silica Dust**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Silica** means:

1.  The substance commonly known as **Silica**; and

2.  Any substance or product which has the same or substantially similar chemical formulation, structure or function as **Silica**, by whatever name manufactured, formulated, structured, sold or distributed.

**Silica Dust** means:

1.  Dust comprising of **Silica** only; and

2.  Dust comprising of **Silica** mixed with other dust or fiber(s) including, but not limited to, asbestos fibers.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

**ENDORSEMENT No. 6**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.:** BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Radioactive Matter Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Radioactive Matter**

This insurance does not apply to any liability arising out of radioactive matter or any form of radiation.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

*Archive Copy*

**ENDORSEMENT No. 7**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.:**  BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Professional Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Professional Liability**

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

83093 (09/03)
AH1246                    *Archive Copy*

## ENDORSEMENT No. 8

**This endorsement, effective 12:01 AM:** January 1, 2008

**Forms a part of policy no:** BE     6542934

**Issued to:** LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### MTBE and Other Fuel Oxygenates Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of methyl tertiary-butyl ether ("MTBE") and other fuel oxygenates including, but not limited to, the following:

1. ether oxygenates, such as ethyl tertiary-butyl ether ("ETBE"), tertiary-amyl methyl ether ("TAME"), tertiary-amyl ethyl ether ("TAEE"), diisopropyl ether ("DIPE"), and dimethyl ether ("DME"); and

2. alcohol oxygenates, such as ethanol (ethyl alcohol), methanol (methyl alcohol), and tertiary-butyl alcohol ("TBA").

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_Vincent Catapano_

**Authorized Representative**
or Countersignature (Where Applicable)

80449 (02/03)
AH1040          *Archive Copy*

## ENDORSEMENT No. 9

**This endorsement, effective 12:01 AM:** January 1, 2008

**Forms a part of policy no: BE      6542934**

**Issued to:** LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Marine Liability Exclusion Endorsement

This policy is amended as follows:

A. Solely as respects watercraft, **Section V. Exclusions, Paragraph A.** is deleted in its entirety.

B. **Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Marine**

This insurance does not apply to any marine liability which includes, but is not limited to, the following:

| | |
|---|---|
| Charterers Liability | Protection and Indemnity Liability |
| Safe Berth Legal Liability | Ship Builders Liability |
| Towers Liability | Stevedores Liability |
| Ship Repairers Legal Liability | Wharfingers Liability |
| Terminal Operation Liability | U.S. Longshoreman and Harbor Workers |
| Jones Act | |

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86470 (8/04)
AH1451          *Archive Copy*

**ENDORSEMENT No. 10**

This endorsement, effective 12:01 AM:  January 1, 2008

Forms a part of policy no:  BE     6542934

Issued to:  LATEX CONSTRUCTION COMPANY INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Lead Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Lead**

This insurance does not apply to any liability arising out of lead or any product(s) containing lead.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative
or Countersignature (in States Where Applicable)

86471 (8/04)
AH1452          *Archive Copy*

**ENDORSEMENT No. 11**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.: BE      6542934**

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Fungus Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** or any other loss, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any **Fungus(i)**, **Molds(s)**, mildew or yeast, or

    b.  Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast, or

    c.  Any substance, vapor , gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast, or

    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom.

Paragraphs a., b., c. and d. above apply regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

    **Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

    **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

    **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

                                       **Authorized Representative**
                           or Countersignature (Where Applicable)

**ENDORSEMENT No. 12**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.:** BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[®]

**Exterior Insulation and Finish Systems (EIFS) Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Exterior Insulation and Finish Systems**

This insurance does not apply to **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury,** included within the **Products-Completed Operations Hazard,** arising in whole or in part out of the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an Exterior Insulation and Finish System (EIFS), synthetic stucco, or any part thereof, including the application or use of paints, conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such product.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

## ENDORSEMENT No. 13

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no:**  BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse<sup>SM</sup>

### Contractors Limitation

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Contractors**

This insurance does not apply to any liability arising out of:

1.  **Property Damage** to any property or equipment leased by the **Insured**;

2.  **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**;

3.  any project insured under a "wrap-up" or any similar insurance plan;

4.  any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, shop drawings, plans, opinions, reports, surveys, field orders, change orders, designs or specifications, and any supervisory, inspection or engineering services;

5.  **Property Damage** arising out of:

    a.  blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

    b.  the collapse of or structural injury to any building or structure due to:

        (1) the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, cofferdam or caisson work; or

        (2) the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof, or

    c.  damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

6.  Any liability assumed by the **Insured** under any contract or agreement.

80409 (07/02)                     Page 1 of 2
AH0896

*Archive Copy*

Paragraphs 5 and 6 of this endorsement will not apply if coverage is provided for such **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (in States Where Applicable)

*Archive Copy*

**ENDORSEMENT No. 14**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.: BE      6542934**

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Anti-Stacking Endorsement**

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

If this insurance and any **Other Insurance** provided by us or any of our affiliated companies will apply to the same claim, **Suit** or **Occurrence**, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy.  However, this condition will not apply if the insurance is specifically written to be excess of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No. 15**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no:  BE      6542934**

**Issued to:  LATEX CONSTRUCTION COMPANY INC**

**By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**

**Commercial Umbrella Liability Policy With CrisisResponse®**

**Aircraft Products and Grounding Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Aircraft Products and Grounding**

This insurance does not apply to any liability included within the **Products-Completed Operations Hazard** relating to:

1.  aircraft and any ground support or control equipment used therewith;

2.  any other goods or products manufactured, sold, handled or distributed by the **Insured** or any services provided or recommended by the **Insured** or by others trading under the **Insured's** name for use in the manufacture, repair, operation or use of any aircraft; or

3.  any articles furnished by the **Insured**, its predecessors, or by others trading under the **Insured's** name and installed in aircraft or used in connection with aircraft or for spare parts for aircraft including but not limited to ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering or other advice or service relating to aircraft and any labor relating to such aircraft or articles.

For the purpose of this endorsement, aircraft includes missiles, spacecraft and launch vehicles.

In addition, this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the **Grounding** of any aircraft.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft, or any part thereof sold, manufactured, handled or distributed by the **Insured** or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawings of the **Insured** or with tools, machinery or other equipment furnished to such persons or organizations by the **Insured**, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations. A **Grounding** will be deemed to commence on the date of an **Occurrence** which discloses such defect, fault, or condition or on the date an aircraft is first withdrawn from service on account of such defect, default or condition, whichever occurs first.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (in States Where Applicable)

86428 (8/04)
AH1421                 *Archive Copy*

**ENDORSEMENT No. 16**

**This endorsement, effective 12:01 AM:**   January 1, 2008

**Forms a part of policy no:**  BE       6542934

**Issued to:**   LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy with CrisisResponse®**

**Act of Terrorism Self-Insured Retention Endorsement**

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

The **DECLARATIONS, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional Self-Insured Retention:

> **ACT OF TERRORISM SELF-INSURED RETENTION - 1,000,000 Each Occurrence** (As respects all liability covered under this policy arising out of any **Act of Terrorism**.) The **Act of Terrorism Self-Insured Retention** will not be reduced or exhausted by **Defense Expenses**.

**ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION** is amended to include the following:

> **ACT OF TERRORISM PREMIUM**          $6,240

**Section IV. LIMITS OF INSURANCE,** is amended to include the following additional provision:

> The **Act of Terrorism Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**. If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Act of Terrorism Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Act of Terrorism Self-Insured Retention**.

**Section III. DEFENSE PROVISIONS,** Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

> A.  We will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Act of Terrorism** means:

1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**;

6. Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (in States Where Applicable)

**ENDORSEMENT No. 17**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.:** BE    6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### GEORGIA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy;   and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### CANCELLATION/NONRENEWAL

A.    The cancellation condition of this policy is replaced by the following:

1.    The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation stating a future date on which this policy is to be cancelled, subject to the following:

a.    If by statute, regulation or contract this notice must be given to a governmental agency, mortgagee or other third party, the Insurer will mail or deliver notice to the third party at least ten (10) days before the effective date of cancellation.  The First Named Insured agrees to mail or deliver a notice to the Insurer at least fifteen (15) days in advance of cancellation.

b.    If only the interest of the First Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the First Named Insured or the date specified in the notice, whichever is later.  However, upon receiving a written notice of cancellation from the First Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the First Named Insured.

B.    The following is added to the cancellation condition and supersedes any other provisions to the contrary:

If the Insurer decides to:

1.    Cancel or nonrenew this policy; or

2.    Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3.    Change any policy provision which would limit or restrict coverage;

Then:

The Insurer will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the First Named Insured and lienholder, if any, at the last mailing address known to the Insurer.  The Insurer will mail or deliver notice at least:

1.    Ten (10) days before the effective date of cancellation if this policy has been in effect less than sixty (60) days or if the Insurer cancels for nonpayment of premium; or

2.    Forty-five (45) days before the effective date of cancellation if this policy has been in effect sixty (60) or more days and the Insurer cancels for a reason other than nonpayment of premium; or

3.    Forty-five (45) days before the expiration date of this policy if the Insurer decides to nonrenew, increase the premium or limit or restrict coverage.

All other terms, conditions, and exclusions remain unchanged.

**AUTHORIZED REPRESENTATIVE**

52138 (7/95)
AH1101           *Archive Copy*

## ENDORSEMENT No. 18

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no:**  BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Duties in the Event of an Occurrence, Claim or Suit and Schedule A - Approved Crisis Management Firms

Solely as respects coverage provided by **Section II INSURING AGREEMENT - CRISISRESPONSEᴤᴹ AND EXCESS CASUALTY CRISIS FUND®**, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

> AIG Domestic Claims, Inc.
> Excess Casualty Claims Department
> Segmentation Unit
> 175 Water Street, 22nd Floor
> New York, NY  10038
> Fax: (866) 743-4376
> E-mail:  excessfnol@aig.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**Schedule A**

**Approved Crisis Management Firms**

The following firms are approved **Crisis Response Firms:**

**Crisis Communications Management Firms:**

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| New York Office<br>501 Madison Avenue<br>New York, N.Y. 10022<br>www.abmac.com | James T. MacGregor<br>Tel: (212) 371-5999<br>Cell: (646) 236-3271<br>Fax: (212) 752-0723<br>jtm@abmac.com | Emergency<br><br>Tel: (212) 343-0818<br>Cell: (917) 449-9964 |
| | Rhonda Barnat<br>Tel: (212) 371-5999<br>Cell: (917) 912-6378<br>Fax: (212) 752-0723<br>rb@abmac.com | |
| Los Angeles Office<br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel: (213) 630-6550<br>Cell: (213) 489-3443<br>Fax: (213) 489-3443<br>idc@abmac.com | Emergency<br><br>Tel: (818) 957-5650<br>Cell: (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| New York City<br>630 Third Avenue<br>New York, N.Y. 10017<br>www.sardverb.com | George Sard<br>Tel: (212) 687-8080<br>Fax: (212) 687-8344<br>gsard@sardverb.com | Emergency<br><br>(917) 750-4392<br>24 Hours/7 Day |
| | Paul Verbinnen<br>Tel: (212) 687-8080<br>Fax: (212) 687-8344<br>pv@sardverb.com | |
| Chicago<br>343 West Erie Street<br>Suite 600<br>Chicago, IL 60610 | Ron Culp<br>Tel: (312) 944-7398<br>Fax: (312) 944-7785 | |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

San Francisco
101 Second Street
Suite 2250
San Francisco, CA 94106

Paul Kranhold
Tel: (415) 618-8750
Fax: (415) 618-8702

---

**Hill and Knowlton**

New York City
466 Lexington Avenue
3rd Floor
New York, N.Y.
www.hillandknowlton.com

Richard C. Hyde
Direct Tel: (212) 885-0372
Main: (212)885-0300
Cell: (917) 816-2208
Fax: (212) 885-0570
dhyde@hillandknowlton.com

**Emergency**

H&K Crisis Pager
(818) 264-5193
24 Hours/7 Days

Christopher R. Gidez
Direct Tel: (212) 885-0480
Main Tel: (212) 885-0300
Cell: (914) 319-6582
Fax: (212) 885-0570
cgidez@hillandknowlton.com

Ottawa, Canada
55 Metcalfe Street
Suite 1100
Ottawa, Canada
K1P  6L5

Jo-Anne Polak
Direct Tel: (613) 786-9954
Main Tel: (613) 238-4371
Cell: (613) 761-2684
Fax: (613) 238-8642
jpolak@hillandknowlton.ca

---

**Lexicon Communications Corp.**

Pasadena
(Suburb of Los Angeles)
520 Bellmore Way
Pasadena CA 91103
information@lexiconcorp.com

Steven Fink
Direct Tel: (626) 683-9333
Main Tel: (626) 683-9200
Cell: (626) 253-1519
Fax: (626) 449-7659
sfink@lexiconcorp.com

**Emergency**

(626) 683-9333
24 Hours/7 Days

---

**Zeno Group**

Washington, D.C.
The Foundry Building
1055 Thomas Jefferson St., NW
Washington, D.C. 20007
www.zenogroup.com

Phillip Armstrong
Direct Tel: (202) 965-7801
Cell: (202) 669-9926
phil.armstrong@zenogroup.com

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Robinson, Lerer & Montgomery**

New York City
1345 Avenue of the Americas
4th Floor
New York, N.Y. 10105
www.rimnet.com

Michael Gross
Direct Tel: (646) 805-2003
Main Tel: (646) 805-2000
Cell: (917) 853-0620
Fax: (646) 805-2828
mgross@rimnet.com

---

**Sitrick and Company, Inc.**

Los Angeles
1840 Century Park East
Suite 800
Los Angeles, CA 90067
www.sitrick.com

Michael S. Sitrick
Direct Tel: (310) 788-2850
Fax: (310) 788-2855
mike_sitrick@sitrick.com

**Emergency**

(310) 358-1011
24 Hours/7 Days

New York City
655 Third Avenue
New York, N.Y. 10017

Jeffrey Lloyd
Direct Tel: (212) 573-6393
Main Tel: (212) 573-6100
Cell: (310) 963-2850
Fax: (212) 573-6165

---

**Investigative Firms:**

**Kroll Associates**

New York City
900 Third Avenue
New York, N.Y. 10022

Mary Jo Phillips
Direct Tel: (212) 833-3246
Fax: (212) 644-5794
mphillips@krollworldwide.com

**Emergency**

(800) GET-KROL
(800) 438-5765
World Wide Crisis
Division
24 Hours/7 Days

---

**GAB Robins North America, Inc.**

Parsippany
9 Campus Drive
Suite 7
Parsippany, N.J. 07504
www.gabrobinsna.com

Kim Mertens
Direct Tel: (973) 993-3438
Cell: (201) 404-6026
Fax: (973) 993-1624
mertens@gabrobins.com

**Emergency**

800-422-4436

---

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

<u>Montreal</u>
CGI (Division of GAB Robins)
1611 Cremazie Blvd. East
3rd Floor
Montreal, Quebec H2M 2P2
Canada
www.cgi.com-insurance.htm

Andre Mancini
Direct Tel: (800) 263-5361
Cell: (450) 566-5073
Fax: (514) 735-8439
andre.mancini@cgi.com

**Emergency**

800-263-5361

**ENDORSEMENT No. 19**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no:** BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**CrisisResponse Coverage Enhancement Endorsement**

This policy is amended as follows:

It is understood and agreed that in every instance in which the phrase "CrisisResponse Sublimit of Insurance" is referenced in this policy and/or its endorsements, the phrase "CrisisResponse Limit of Insurance" shall be substituted.

**Section IV. LIMITS OF INSURANCE**, Paragraph I. is deleted in its entirety and replaced by the following:

I.  The **CrisisResponse Limit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Limit of Insurance** will be in addition to the applicable Limit of Insurance.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

94621 (5/07)
AH2035            *Archive Copy*

LATEX CONSTRUCTION COMPANY INC
Named Insured

BE    6542934
Policy Number

# GEORGIA NOTICE
## UNINSURED MOTORISTS COVERAGE (UMBRELLA/EXCESS)

**THE SELECTION(S) YOU MAKE BELOW AFFECT YOUR UNINSURED MOTORISTS COVERAGE. PLEASE REVIEW YOUR POLICY CAREFULLY TO ENSURE THAT YOU UNDERSTAND THE PROTECTION AFFORDED BY THIS COVERAGE. CONTACT YOUR INSURANCE REPRESENTATIVE IF YOU HAVE ANY QUESTIONS ABOUT THIS COVERAGE OR HOW TO COMPLETE THIS NOTICE.**

Georgia law requires us to provide Uninsured Motorists Coverage in your policy with a coverage limit equal to Georgia's minimum requirement, which is split limits of $25,000 each person bodily injury and (subject to the each person limit) $50,000 each accident bodily injury and $25,000 each accident property damage. This coverage limit may be provided as a combined single limit of $75,000 each accident. You are not required to accept Uninsured Motorists Coverage at Georgia's minimum requirement. You may select a greater coverage limit, but the coverage limit you select may not be greater than your policys limit of liability. In addition, you may reject Uninsured Motorists Coverage in its entirety.

In accordance with Georgia law, the undersigned Named Insured, for each insured in the policy: (mark applicable item(s) with an "X")

( )    rejects Uninsured Motorists Coverage in its entirety. (If you choose this option, you need not make any other choices. Please proceed to the signature block and execute this Notice.)

( )    has selected Uninsured Motorists Coverage with a coverage limit equal to Georgia's minimum requirement under their primary automobile policy.
Policy number:            TBD
Insurance carrier:        TBD

( )    selects Uninsured Motorists Coverage with a coverage limit equal to the policy's limit of liability

( )    selects Uninsured Motorists Coverage with the following coverage limit, which is not less than Georgia's minimum requirement, and not greater than the policy's limit of liability:

( )    $75,000 each accident (combined single limit)

I understand the protection afforded by Uninsured Motorists Coverage and the selection(s) I have made on this Notice regarding Uninsured Motorists Coverage. I further understand and agree that my selection(s) will apply to this policy and all future transfers, substitutions, amendments, alterations, modifications, reinstatements or replacements of this policy, and all future renewals of this policy, unless I make a written request to change my selection(s), and such request is received and approved by the Company.

All other terms, conditions, and exclusions of the policy remain unchanged.

_____
Effective Date

_____
Authorized Signature of Named Insured

_____
Date Signed

_____
Name and Title

91824 (11/06)
AH2000          *Archive Copy*

**ENDORSEMENT No. 21**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no.:** BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employers' Liability For Occupational Disease Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employers' Liability For Occupational Disease**

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of any Occupational Disease.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_Vincent Catapano_

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

83072 (09/03)
AH1227          *Archive Copy*

**ENDORSEMENT No. 22**

**This endorsement, effective 12:01 AM:**  January 1, 2008

**Forms a part of policy no:**  BE      6542934

**Issued to:**  LATEX CONSTRUCTION COMPANY INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse[SM]**

**Athletic Activities Exclusion**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Athletic Activities**

This insurance does not apply to **Bodily Injury** to any person while practicing for or participating in any athletic or sports contest or exhibition sponsored, conducted, directed or participated in by **Insured.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
**or Countersignature (in States Where Applicable)**

80396 (07/02)
AH0883

*Archive Copy*